UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

    Fritz G. Roberts and                        Case No. 22-20766-beh
    Ashley D. Roberts,

             Debtors.                             Chapter 13

**DECISION AND ORDER ON LEBAKKENS INC. OF WISCONSIN'S OBJECTION TO PLAN CONFIRMATION**

        The issue before the Court is whether the rent-to-own agreements the debtors entered into with Lebakkens Inc. of Wisconsin ("Lebakkens") are true leases, or purchases. The nature of the contracts is consequential to the debtors' plan under Chapter 13 of the Bankruptcy Code because their plan proposes to make payments on the goods subject to the agreements—a washer, dryer, and mattress—as if Lebakkens were a secured creditor, with a security interest in (rather than ownership of) the goods at issue. If the agreements are true leases, as Lebakkens argues, and not disguised security agreements, as the debtors contend, then the Court cannot confirm the debtors' Chapter 13 plan as proposed, because it fails to comply with § 365 of the Bankruptcy Code, which governs executory contracts and unexpired leases. For the reasons that follow, the Court concludes that the agreements at issue are leases rather than security agreements and will sustain Lebakkens' objection to confirmation of the debtors' Chapter 13 plan.

**FACTUAL BACKGROUND**

        On November 16, 2021, debtors Fritz and Ashley Roberts executed a "Rental Agreement with Ownership Provisions" with Lebakkens for the lease of a washer and dryer.[1] The agreement's "lease expiration (maturity) date" also

---

[1] Lebakkens attached a copy of the agreement (as well as a copy of the February 7, 2022 agreement discussed *infra*) to its objection to confirmation of the debtors' Chapter 13 plan, but did not submit an affidavit of a person with personal knowledge to authenticate the agreements. *See* Fed. R. Evid. 901(a). Nonetheless, because the debtors have not disputed the authenticity of the agreement copies, the Court will consider them.

was November 16, 2021, but the debtors had the option to renew the agreement on a monthly basis, on the following terms:

> At your option, this lease may be renewed by paying an amount equal to the Renewal Rental Payment Amount above (the "Renewal Rental Payment") on or before the first day of each subsequent renewal rental period. . . . If renewed, the lease period under the Rental Agreement will mature and expire at the end of the Renewal Period (the Renewal Expiration Date), unless renewed again. If you do not make a Renewal Rental Payment, the lease will automatically expire at the end of the current Renewal Period and you will be obligated to return the Property to us immediately on or before the Renewal Expiration Date. You have no right to retain and use the Property if the lease expires and has not been renewed. If you do not renew this lease and you timely return the Property to us, you will not have any future payment obligations under this Rental Agreement.

ECF No. 25-1, at 1. The contract identified the "Renewal Rental Payment" as $168.96 and, with sales tax of $9.29 added, the "Total Renewal Payment Amount" was $178.25.

The agreement also provided that Lebakkens would continue to hold title to the appliances, but the debtors could obtain ownership of the property in one of two ways. First, the debtors could pay the "Total Amount of All Rental Payments to own the Property," which was defined as 24 months' worth of the renewal rental payment of $168.96, or $4,055.04. Alternately, the debtors could exercise an option to purchase, by paying 50% of the remaining unpaid balance of the "Total Amount of All Rental Payments to own the Property," plus sales tax. The cash price of the appliances, according to the agreement, was $2,027.52.

Under the agreement, the debtors assumed liability if the property was stolen, lost, or damaged, while Lebakkens was responsible for maintaining and servicing the property. While the agreement stated that Wisconsin law applied, it specifically added that the Wisconsin Consumer Act ("WCA") did not apply to the transaction, unless the debtors had made payments in an amount equal to

75% of the "Total Amount of All Rental Payments to Own the Property"—in this case, $3,041.28—which the debtors do not argue they have done.[2]

The debtors entered into a second, and substantially similar, rent-to-own agreement for a mattress on February 6, 2022, with an effective date of February 7, 2022. ECF No. 25-2. Like the agreement for the appliances, the expiration date on the mattress agreement was the same as the contract date, February 7. The mattress agreement contained identical clauses governing renewal, liability, maintenance, ownership, the option to purchase, and limited applicability of the WCA. The "Renewal Rental Payment" identified in the mattress agreement was $160.28 (and, after sales tax of $8.81, the "Total Renewal Payment Amount" was $169.09), while the "Total Amount of All Rental Payments to own the Property," was $1,923.36 (equal to 12 months' of the renewal rental payment of $160.28).[3] The agreement listed the cash price of the mattress as $961.68.

Less than a month after executing the second rental agreement, on February 28, 2022, the debtors filed a petition under Chapter 13 of the Bankruptcy Code. ECF No. 1. In their schedules, they disclose Lebakkens as a secured creditor with a claim of $2,000 and having a purchase money security interest in "furniture/appliances" worth $1,500. *Id.* at 18. In their Chapter 13 plan, the debtors likewise treat Lebakkens as a secured creditor, rather than a lessor, and propose to make pre-confirmation adequate protection payments of $20, and to pay its secured claim of $2,000 in full at 5.00% interest, resulting in a total payout of $2,143.79 over the life of the 36-month plan. ECF No. 2, at 5.

---

[2] According to Lebakkens' payment history (which the debtors do not dispute), as of the petition date, the remaining balance, for purposes of purchasing the washer and dryer, was $3,598.50, out of a total of $4,055.04. ECF No. 31-1, at 2. As with copies of the agreements themselves, the exhibit Lebakkens submitted to show the remaining balance for the household goods is unaccompanied by an authenticating affidavit. *See* Fed. R. Evid. 901(a).

[3] Per Lebakkens' (unauthenticated) payment history, as of the petition date, the remaining balance, for purposes of purchasing the mattress, was $1,763.08, out of $1,923.36. ECF No. 31-2, at 2.

Lebakkens objected to the plan, arguing that the rental agreements are true leases under Wis. Stat. § 401.203(2), and therefore executory contracts that must be assumed or rejected in their entirety. ECF No. 25.

## DISCUSSION

The determination of whether the rental agreements here are leases or disguised security agreements is governed by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). As noted, each of the agreements provides that it is to be governed by Wisconsin law. According to Lebakkens, the applicable state law here is the Uniform Commercial Code, as codified at Wis. Stat. § 401.203. That section of the UCC instructs how to distinguish leases from security interests. It reads, in pertinent part:

> (1) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.
>
> (2) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and if any of the following apply:
>
>> (a) The original term of the lease is equal to or greater than the remaining economic life of the goods.
>>
>> (b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods.
>>
>> (c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.
>>
>> (d) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

Wis. Stat. § 401.203.

As explained by the bankruptcy court in *In re Action Transit, Inc.*, this statute creates a two-pronged test: "The first prong asks whether 'the consideration that the lessee is to pay . . . for the right to [possess and use] the goods is an obligation for the term of the lease not subject to termination by

the lessee,'" while the second prong asks whether any of the four other conditions identified in the statute exist. *Action Transit*, Case No. 07-27904-PP, 2008 WL 533992, at *4–5 (Bankr. E.D. Wis. Jan. 10, 2008).[4] "If the answer to the question i[n] the first prong is 'yes,' and the answer to any of the four sub-questions in the second prong is 'yes,' then the transaction creates a security interest, rather than a lease." *Id.* at *5.

Crucial to the difference between a lease and a disguised sale is the lessee's unilateral ability to cancel. As one bankruptcy court recently observed, however, if a lease can be terminated by the lessee (prong one), "courts are split on the significance of that fact." *In re Roberts*, 620 B.R. 336, 341 (Bankr. D.N.M. 2020). While some courts have held "that a lease terminable at will by the lessee is a true lease [and] no further analysis or weighing of factors is necessary," *see id.* (citing cases including *In re Powers*, 983 F.2d 88, 90 (7th Cir. 1993) (applying Illinois law and concluding "where a lessee has the right to terminate the lease before the option arises to purchase the property for no additional or nominal consideration, the lease is a true lease and cannot be a conditional sale")), other courts "have rejected the view that a lease terminable at will by the lessee at any time must perforce be a true lease" and instead

---

[4] Although the *Action Transit* court considered the predecessor to the current version of § 401.203, then codified at § 401.201(37)(b), the prior version of the statute sets forth the same two-part test:

> Whether a transaction creates a lease or security interest is determined by the facts of each case. A transaction creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and any of the following applies:
>
> 1. The original term of the lease is equal to or greater than the remaining economic life of the goods.
> 2. The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods.
> 3. The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
> 4. The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

Wis. Stat. § 401.201(37)(b) (effective to July 31, 2010).

consider all the facts of the case to determine whether the "economic realities" of the agreement indicate a lease or a security agreement, *see id.* (citing cases).

Under either approach, however, the agreements at issue in this case are leases, not security agreements. As Lebakkens notes, the debtors are free to terminate the agreements at any time simply by opting not to make payments and returning the property. *See* ECF No. 31, at 3. Although neither agreement contains a provision expressly setting forth the parties' termination rights (at least in those words), the substance of the agreements reflects that the debtors maintain the ability to allow the leases to expire, and therefore "terminate," by choosing not to renew. *See* ECF No. 25-1, at 1 ("If you do not make a Renewal Rental Payment, the lease will automatically expire at the end of the current Renewal Period and you will be obligated to return the property to us immediately on or before the Renewal Expiration Date."); ECF No. 25-2, at 1 (same). In *In re Behlke*—a case cited by Lebakkens—another court in this district considered whether agreements containing terms similar to those at issue here were true leases, and in doing so, equated the lessees' "right not to renew without penalty each month" with the ability "to terminate the lease arrangement at any time," ultimately finding the transactions to be leases rather than security agreements. *See* Case No. 10-28888, ECF No. 29 (Bankr. E.D. Wis. Oct. 22, 2010).

The Seventh Circuit likewise has considered a right not to renew as tantamount to a right to terminate. *See, e.g.*, *Matter of Marhoefer Packing Co.,* 674 F.2d 1139, 1142–43 (7th Cir. 1982) (finding agreement to be a true lease under a former version of the Indiana UCC and noting that where a lessee had the option not to renew a lease before the option to purchase arose with no further obligation to continue paying rent—which was, in effect, "a right to terminate the agreement after the first four years and cease making payments without that option ever becoming operative"—the agreement was a true lease and not a conditional sale); *Powers,* 983 F.2d at 91 (applying the Illinois version of the UCC identical to the version in *Marhoefer* to rental agreements

for household goods renewable on a bi-weekly basis, and reasoning "because the lessee could terminate the lease at any time, the presence of an option to acquire the goods for a nominal price did not convert the leases into installment sales"); *see also Action Transit*, 2008 WL 533992, at *6 (applying the Wisconsin UCC and finding a "lease" agreement to be a disguised sale after considering that the debtor was unable to terminate its obligation to pay for the right to possess and use the goods for the term of the lease, because "the contract [did] not provide the debtor with a way to say, 'I've decided I don't want to lease this rolling stock anymore—I hereby terminate the lease.'").

But even if the debtors' right to terminate is not conclusive and Wis. Stat. § 401.203(2) must be read in the conjunctive, other circumstances dictate that the agreements at issue are leases rather than security instruments. When looking at "the facts of each case" as required by the UCC to determine whether an agreement is a lease or a security agreement, the key focus is "whether the lessor retains an economically significant reversionary interest" in the property. *Roberts*, 620 B.R. at 342 (internal citations omitted). Factors relevant to this analysis include:

> (1) whether the lessee has an option to renew the lease or to become the owner of the property; (2) whether the useful life of the property exceeds the length of the term of the lease; (3) whether the amount of rent exceeds the fair market value of the property; and (4) whether the debtor is responsible for the payment of taxes, insurance and other costs incident to ownership.

*In re Meeks*, 210 B.R. 1007, 1010 (Bankr. S.D. Ill. 1995) (citing *Marhoefer*, 674 F.2d at 1145).

Here, the agreements are terminable at will by the debtors, and the debtors are under no obligation to purchase the leased goods. The value of the items is greater than the first "renewal" payment under each contract. Lebakkens is required to maintain and service the property. And, although the parties have failed to present any evidence regarding the useful life of the goods, the Court reasonably infers that the washer, dryer, and mattress have useful lives beyond the terms of the agreements. *See Meeks*, 210 B.R. at 1010–

11 ("In the absence of such evidence [regarding the useful life of the property], the Court can only assume that the useful life of the washer and dryer exceeds the initial one month term of the agreement."). Altogether, these circumstances suggest that the agreements were intended to be leases, not sales. *See, e.g.*, *Behlke*, Case No. 10-28888, ECF No. 29 ("The court determined that the transactions were true leases. The length of the term was one month, so the lessor maintained an economic interest in the assets. . . . The duty to maintain remained with the lessor, so the lessor had the risk of loss. The substance of the agreements compels the finding that these are true leases, not disguised security agreements. Thus, the commercial code applies, not the consumer act, as the latter applies to secured transactions and not leases.").

Although the debtors argue that the Wisconsin Consumer Act, rather than the UCC, applies to these agreements (as sales rather than leases), their arguments remain undeveloped, and the debtors bear the burden of proving that the agreements are disguised security agreements rather than leases. *See, e.g., In re Brankle Brokerage & Leasing, Inc.*, 394 B.R. 906, 909 (Bankr. N.D. Ind. 2008) ("As the one contending the agreement is something other than what it purports to be, the plaintiff bears the burden of proving that it is disguised security interest rather than a lease."); *see also In re Parker,* 363 B.R. 769, 773 (Bankr. D.S.C. 2006); *In re Roberts*, 620 B.R. at 340.

The debtors have failed to meet their burden. The WCA applies to consumer credit transactions—which include "consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans"—in which the amount financed is less than $25,000. *See* Wis. Stat. §§ 421.301(9) and 421.202(6). A consumer lease is defined in the WCA as "a lease of goods which a merchant makes to a customer for a term exceeding 4 months," Wis. Stat. § 421.301(11), meaning the one-month renewable rental agreements between Lebakkens and the debtors fall outside this statutory definition. A consumer credit sale is defined in the WCA as:

> a sale of goods, services or an interest in land to a customer on credit where the debt is payable in installments or a finance charge is imposed

and includes any agreement in the form of a bailment of goods or lease of goods or real property if the bailee or lessee pays or agrees to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the goods or real property involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the goods or real property upon full compliance with the terms of the agreement.

Wis. Stat. § 421.301(9). The rental agreements themselves concede that the transactions at issue *may* be deemed consumer credit sales in certain situations:

> The Rental Agreement above is a lease and not a consumer credit sale, but Wisconsin courts have held that a rental agreement like this Rental Agreement is considered a consumer credit sale under the Wisconsin Consumer Act ("WCA") at the point that you will become the owner of the property for nominal consideration considering the amount you have already paid or for no further consideration. For purposes of the (WCA), when you have made an amount equal to 75% of the Total Amount of All Rental Payments to Own the Property, you agree with us that the remaining rental payments you will need to make to become owner of the Property will be considered nominal. This means that after an amount equal to 75% of the Total Amount of All Rental Payments to Own the Property is paid, this transaction will then be considered a consumer credit transaction subject to the WCA . . . .

ECF No. 25-1, at 3; ECF No. 25-2, at 3.

At the time the debtors filed for bankruptcy, they had been making payments on each agreement for fewer than four months—far less than 75% of the remaining rental payment total. In the circumstances, the amount necessary for the debtors to exercise the early purchase option cannot be said to be "nominal consideration." Nor can the Court find on this record that the debtors would become the owners of the goods "upon full compliance with the terms of the agreement[s]," when considering their month-to-month nature. Assuming the debtors made "renewal" payments on both agreements in February 2022, no further action was required by the debtors other than the return of the property upon expiration in March 2022 (absent further renewal or exercise of the early purchase option); as of the petition date, the debtors would have fully complied with the terms of each agreement but would not have been entitled to claim ownership of the rental property.

Counsel for the debtors nevertheless argues that the contracts are installment agreements and impose an obligation to repay under harshly unfavorable terms. He contends that these terms are part of a scheme to capitalize on the debtors' precarious financial situation, as they will have paid double the purchase price for the property upon completion of the payments under the contracts, and further maintains that the debtors do not wish to retain the property if the Court finds that the goods are being leased. But as other courts have observed, debtors who terminate rent-to-own agreements naturally will lose any investment or equity in the property rented; "that is true of any rent-to-own lease." *In re Harris*, 562 B.R. 403, 407 (Bankr. W.D. Mo. 2016). In addition, rent-to-own agreements "do serve some benefit to people who do not qualify for traditional financing." *Id. See also Parker*, 363 B.R. at 774 ("Debtors argue that the there is no meaningful right of termination in these instances because [] the amount of the payments under the agreements is disproportionate to the value of the property; thus any early termination by Debtors would subject them to a penalty in that they would forfeit substantial consideration paid prior to termination. This position, if adopted, would intertwine the first part of the bright line test [under the UCC] with the factor set forth in [the second subsection]. . . . [A]n agreement does not create a security interest merely because it obligates the lessee to pay consideration greater than the fair market value of the property. . . . In these cases, Debtors are under no obligation whatsoever to continue in their respective leases and they suffer no penalty upon an early termination, other than, upon their voluntary election to terminate, the loss of the leased property and previously paid consideration both of which are natural consequences of the termination of a lease."). On this record, the Court is compelled to find that the parties' agreements are leases, not consumer credit sales under the WCA.

## CONCLUSION AND ORDER

For the foregoing reasons, the debtors' rental agreements with Lebakkens are leases rather than security instruments and must be treated in the debtors' plan in accordance with 11 U.S.C. § 365. Accordingly,

IT IS THEREFORE ORDERED that Lebakkens' objection to confirmation of the debtors' Chapter 13 plan is SUSTAINED. The debtors must file an amended Chapter 13 plan within 30 days of this order, consistent with this decision.

Dated: June 24, 2022

By the Court:

_____
Beth E. Hanan
United States Bankruptcy Judge